**UNITED STATES of America, Plaintiff,**

v.

**Michael Eugene TRINASTICH, Defendant.**

No. 24028–1.

United States District Court, W. D. Missouri, W. D.

Feb. 9, 1973.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Kenneth West, James A. Polsinelli, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER DISMISSING INDICTMENT WITHOUT PREJUDICE

JOHN W. OLIVER, District Judge.

### I.

This case, a prosecution for an alleged violation of Section 1201, Title 18, United States Code, would have been reached for trial on the regular Division I–Division II docket on February 5, 1973. On Friday, February 2, 1973, counsel for the government thoughtfully advised the Court that he anticipated that several difficult questions of evidence were likely to arise during the anticipated trial. He made inquiry whether, in accordance with the Court's usual practice, a conference with counsel for both sides should be scheduled to discuss those questions.

A conference with counsel for the parties was accordingly convened at 2:00 p.m. on Friday, February 2, 1973, for the purpose stated. At that conference, the Court's attention was for the first time directed to the fact that the indictment in this case alleged in conjunctive language an alleged violation of Section 1201, Title 18, United States Code, which the Congress stated in disjunctive language.

Specifically, the government's "plain, concise and definite written statement of the essential facts constituting the offense charged," as required by Rule 7(c) of the Rules of Criminal Procedure, alleged only that the defendant had willfully and knowingly transported a named person in interstate commerce "who had theretofore been unlawfully seized, confined, inveigled, decoyed, kidnapped, carried away *and* held by [the defendant] for reward or otherwise, that is for the purpose of sexual gratification, all in violation of Section 1201, Title 18, United States Code."

Section 1201, Title 18, United States Code, prohibits, in disjunctive language, the interstate transportation of a person who has been "seized, confined, inveigled, decoyed, kidnapped, abducted *or* carried away." All parties recognized, as they must, that the same person can not, for example, be both "decoyed" *and* "kidnapped" in interstate commerce, anymore than the same piece of personal property may be both "embezzled" *and* "stolen" from interstate commerce. Although the legislative history is vague, it must be assumed that a person who is "decoyed" across a state line is one who has been induced to do so voluntarily because of some sort of false representation; a person who is "kidnapped" is taken across the state line by force and against his will.

The additional question of whether the holding of a person for "the purpose of sexual gratification," as alleged in the indictment, stated an offense within the meaning of Section 1201's prohibition against interstate transportation of persons "for ransom or reward *or otherwise*" also arose and was discussed at the conference. The Court indicated

that the indictment was not faulty in that regard in light of United States v. Healy, 376 U.S. 75, 81, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), which expressly recognized the earlier authority of Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936). See also Bailey v. United States (10th Cir., 1969) 410 F.2d 1209, 1217, to which the government directed our attention in regard to that question.

It was in connection with the discussion of the "or otherwise" question, however, that the Court learned for the first time that the State of Kansas has also indicted the defendant for rape. That case, of course, directly involves the same factual circumstances which allegedly constitute the federal offense for which he is charged in this case. We were advised at the conference that the trial of the State rape charge has been specially set for trial and will be tried in the District Court of Johnson County, Kansas, later this month.

## II.

■ The question of whether defendant's motion to dismiss for failure to comply with Rule 7(c) should be granted is not affected by the circumstances relating to the overlapping State and federal prosecutions. It is appropriate, however, that those circumstances not be ignored because they may be relevant in connection with any future prosecution which the government may wish to pursue after the trial of the State rape charge in the District Court of Johnson County, Kansas, later this month. We shall first state our reasons why defendant's motion to dismiss should be granted without prejudice.

United States v. Frank (W.D.Mo., 1972) 350 F.Supp. 489, upon which defendant relies, shows that for now over two years we have indicated our agreement with what the Court of Appeals panel, which included the present Chief Justice of the United States, said in Pino v. United States, 125 U.S.App.D.C. 225, 370 F.2d 247, 249, in regard to the "unaccountable practice" of using con-

junctive language in an indictment which attempts to charge a violation of a statute which is couched in disjunctive language. Pino flatly stated that "indictments should not be prepared in this fashion in the first instance" and that as early as 1965 in Jackson v. United States (1965) 121 U.S.App.D.C. 160, 348 F.2d 772, it had "referred to this use of the conjunctive in the indictment as confusing." The Court of Appeals, of course, could not reach the violation of Rule 7(c) question because the defendant in that case did not make any pretrial objection to the indictment, as contemplated by Rule 12(b)(2). Pino accordingly did not reverse on that ground because the defendant's objection "was clearly untimely under Rule 12(b)(2), Fed.R.Crim.P."

The attack on the indictment involved in the Frank case, like the attack made in Pino, was not until after trial. We reluctantly concluded that in a procedural situation involving a post-trial attack upon an indictment, numerous Eighth Circuit cases such as Rimerman v. United States (8th Cir., 1967) 374 F.2d 251, required that we not grant a new trial in cases in which the defendant had not filed a timely pretrial motion to dismiss for an alleged violation of Rule 7(c).

Neither Rimerman nor any other case with which we are familiar remotely suggests that the vague post-conviction approval of the form of an indictment drawn under 19th Century rules of criminal pleading apparently approved in the leading case of Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), prohibits this Court from granting a pretrial motion to dismiss an indictment which fails to comply with the explicit requirements of Rule 7(c). Such a motion has been filed in this case. We find and conclude that the indictment in this case does not comply with the plain requirements of Rule 7(c) and that the pending pretrial motion should be granted to avoid the obvious confusion which would be injected into the trial of this case should the motion be denied.

8 Moore's Federal Practice, ¶ 7.04, p. 7–14, commenting on the purpose of Rule 7(c)'s requirement that the indictment shall consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged," stated that "the draftsmen of the Rules were much influenced by 'horrible' examples of prolix indictments, and the desire for simplification and elimination of technicalities is reflected in the Official Forms." Later in the same section, attention was directed to the fact that "Rule 7(c) expressly provides that it may be alleged in a single count that the means by which defendant committed the offense are unknown, *or* that he committed it by one *or* more specified means." (Id. p. 7–21, emphasis ours).

Professor Moore reiterated throughout his discussion of Rule 7(c) that "[o]rdinarily it is sufficient if the indictment or information follows the language of the statute creating the offense." (Id. p. 7–16). He quoted with approval the conclusion stated in Finn v. United States (4th Cir., 1958) 256 F.2d 304, at 306, that the government in that case had "failed to observe the better and easier practice, generally followed by careful prosecutors, of charging the offense in the language of the statute."

Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), which reversed a conviction affirmed in the Court of Appeals, is one of the few cases in which the Supreme Court had occasion to discuss Rule 7(c). That case pointed out that until 1872, when the Congress enacted what ultimately became 18 U.S.C. (1940 ed.) § 556, federal courts were guided in their judgments concerning the sufficiency of grand jury indictments by the common law. *Russell* teaches that "any discussion of the purpose served by a grand jury indictment in the administration of federal criminal law must begin with the Fifth and Sixth Amendments to the Constitution." (Id. at 760, 82 S.Ct. at 1045). The Supreme Court directed attention to the holding of United States v. Cruikshank, 92 U.S.

542, 558, 23 L.Ed. 588, and quoted with approval its conclusion that "it is an elemental principle of criminal pleading [that an indictment] must state the species—it must descend to particulars" (Id. at 765, 82 S.Ct. at 1047). *Russell* held that an indictment not framed to apprise the defendant "with reasonable certainty of the nature of the accusation against him . . . is defective, although it may follow the language of the statute." (Quoted from United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819) and that, as stated in United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 an indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." (Id. at 765, 82 S.Ct. at 1048).

Most importantly, *Russell* explicitly held that "these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure." (Id. at 765, 82 S.Ct. at 1048). That case also concluded that "[i]t is a settled rule that a bill of particulars can not save an invalid indictment" (id. at 770, 82 S.Ct. at 1050). While Mr. Justice Harlan dissented in regard to the application of the settled law to the factual circumstances presented in *Russell*, he agreed that the purpose of Rule 7(c) "simply was to do away with the subtleties and uncertainties that had characterized criminal pleading at common law."

We quite agree with Judge Kaufman's statement in United States v. Seeger (2 Cir., 1962) 303 F.2d 478, 483 (cited with approval in Gojack v. United States, 384 U.S. 702, 714, 86 S.Ct. 1689, 16 L.Ed.2d 870 (1966), that we are anxious to avoid "overelaboration and formalism" in ruling questions arising under Rule 7(c) pretrial motions. But we also recognize, as did Judge Kaufman, that "[t]he Federal Rules of Criminal Procedure unmistakably require the Government to plead

'*the essential facts* constituting the offense charged' " (Judge Kaufman's emphasis) and that the purposes to be served by that rule will not be fulfilled unless the rule is enforced in a manner which will foreclose the "unaccountable manner" in which indictments are apparently routinely presented to grand juries in this judicial district.

### III.

We have noted above that this case is complicated by simultaneous State and federal prosecutions against the same defendant for acts which allegedly constitute violations of both State and federal law. Long-standing principles of comity concerning federal-state relations would have required this Court, absent exceptional circumstances neither apparent nor suggested in this case, to postpone trial of this case until after the trial of the State court case now set later this month in the District Court of Johnson County, Kansas.

█ It has long been recognized that the primary responsibility for the enforcement of criminal law rests upon the various States; not upon the federal government. The fact that the State of Kansas is involved rather than the State of Missouri, as is increasingly the case in regard to many cases recently filed in this Court, does not militate against this general and fundamental principle of federalism. Experience establishes that appropriate recognition of the primary role the States play in the administration of criminal justice sometimes obviates the time and expense of federal prosecution. In this particular case, for example, the government properly recognized at the conference that it would be doubtful whether consideration would even be given to seeking a reindictment of the defendant should he be convicted of rape in the pending Kansas case.

Whether the federal government could properly seek another indictment should the defendant be acquitted in the Kansas case may be dependent upon application of principles stated in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and other cases with which counsel are familiar. We, of course, do not reach or indicate any view in regard to that question.

The primary benefit which may flow from our action granting the defendant's motion to dismiss this case without prejudice is to afford the government still another opportunity to defend what the Chief Justice has described as the "unaccountable practice" of continuing, in open violation of Rule 7(c), to use conjunctive language in indictments which purport to allege the violation of the disjunctive language of a particular statute. We have welcomed, indeed, have invited, such an appeal in numerous other cases in order to eliminate the confusion and possible reversible error implicit in the trial of cases based on indictments which do not comply with Rule 7(c).

Counsel for the government were advised at the conference that, because of limitations of time, we did not intend to spell out all of the areas of confusion created by violations of Rule 7(c), in this memorandum opinion unless the government would definitively indicate that it wished to perfect a direct appeal to the Supreme Court of the United States from our order granting the pending motion. It was agreed at the conference that should the government desire to appeal it would so indicate by promptly filing an appropriate motion for reconsideration in which it would definitively indicate its desire. We advised the government that should it elect to pursue that course, which we again welcome and invite, we would more fully state the reasons why we believe the fair and orderly administration of criminal justice in the District Courts of the United States requires that Rule 7(c) be enforced as it was promulgated by the Supreme Court of the United States.

For the reasons stated, it is

Ordered that the indictment should be and is hereby dismissed without prejudice.